Welcome to the United States Court of Appeals for the Fourth Circuit. We have three cases on for argument this morning. First up is 23-1379, 23-2059, Chavez v. Garland. Mr. Winograd, good to see you again. Thank you, Chief Judge Diaz, and may it please the court. The question in this case is whether petty larceny in Virginia is a crime involving moral turpitude or CIMT. We have raised two arguments why it is not, and the court should rule in our favor if it agrees with either one. First, defendants can be convicted for acting with a mens rea of negligence by taking property that they sincerely but unreasonably believed was abandoned or that they were otherwise entitled to take. And second, defendants can be convicted for taking property of de minimis value, including worth even less than a penny. Unless the court prefers otherwise, I'll address the arguments in that order. To obtain a conviction for larceny, Virginia prosecutors must establish that the defendant had an intent to steal. We don't dispute that. But in at least four cases, the Virginia Court of Appeals has held that a defendant can have an intent to steal even if he subjectively believed the property in question was abandoned. According to those decisions, a subjective belief that the property was abandoned is only a defense to larceny and can only negate the intent to steal if that belief was reasonable, all of which means that defendants can be convicted of larceny in Virginia for negligently taking property that they sincerely but unreasonably believed they were entitled to take. Has any Virginia court actually expressly said that? Yes, I believe so. I think Welch certainly proves our point that that was the in which a woman took an unattended tablet that she found inside a convenience store. And we submitted the trial transcript with a reply brief. And if you go to pages 42 and 43 of the addendum, the trial judge specifically said that a defendant can only succeed on an abandonment defense if the belief was both subjectively honest and objectively reasonable. How do I square that with what strikes me as a much more nuanced analysis by the Court of between two questions? One, whether you're entitled to a jury instruction, which I agree, they clearly say it has to be objectively reasonable to get a jury instruction versus sufficiency of the evidence where when the Welch Court is talking about that, it seems much more to be saying a fact finder could reasonably conclude that she did not in fact believe it was hers because as a matter of fact, the fact finder could find you probably don't think there's an abandoned iPad in the middle of a gas station. And then just devastatingly for that defendant, a person who believes something is theirs probably doesn't put a napkin over it. That seems wildly inconsistent with this objectively honest belief that you think it's yours. Sure. A few responses to that, Your Honor. One, Welch says, we read it as a statement of law that a defendant charged with larceny can assert an honest belief that the property she is charged with stealing was abandoned so long as the evidence establishes a reasonable basis for her to have such a belief. Then on the distinction between the jury instruction and the ultimate factual question, we think that's really a distinction without a difference. I'm sorry to interrupt, but so the first half of what you said with respect to the reasonable belief makes sense, but ultimately a jury or in this case, the judge has to make it a finding that there was actually a specific intent to steal. It's nothing to do with reasonableness. They just didn't believe her, right? And convicted her. Well, it's both. We don't dispute that a defendant, the first hurdle to get over is that they had a subjectively honest belief. But even if they do have a subjectively honest belief, our reading of these decisions is that they also must, the government has to disprove that that belief was objectively reasonable. And, but that means affirmatively prove that you're caught, not your client, but the defendant had the specific intent to steal. Well, they don't say, the court's never said specific intent. There has to be an intent to steal. But I think that just raises the question of what is sufficient to satisfy that intent. And even though an intent to steal, we would generally think would require specific intent. The court, the Virginia Court of Appeals, as we read those opinions has said, no, it's not specific intent. It's even if someone does subjectively believes the property is abandoned, that belief is only sufficient if that belief was objectively reasonable. So what do you do with footnote three of Welch, right? So footnote three in Welch tells us that the critical finding under our case law is whether they had a good faith belief, period. The reasonable basis language the court explains is asking about whether there's sufficient evidence to allow an instruction to the jury, right? So the jury's question is just whether there was a good faith belief. Now there might be some evidentiary challenges. You don't get an instruction unless you put forward evidence, right? But, but that's not what the jury's finding is. The jury has to find that your client intended to steal. And the way to negate that is to say, I didn't intend to steal it because I had a good faith belief it was mine, even if that belief was crazy. Sure. A few responses. One, we think Welch said that the subject, that the good faith belief was the critical finding because that's always the threshold question. You first have to look at whether it even is a subject. But it then goes on to explain what the reasonable basis language goes to is whether there's sufficient evidence on the instruction and the jury instruction issue is a different question for us. But we're asking whether the elements require this or not. Welch itself was a bench trial. There were no jury instructions and the judge nonetheless considered the objective reasonableness of the defendant's belief. Of course he did because that's evidence. This is what the court is saying. I mean, I'm just literally repeating what they say. That's evidence of whether the belief was in good faith. I mean, one piece of evidence that the bench, the trier of fact can consider in determining whether your belief is in good faith is whether it's reasonable or not. It's not dispositive of that question. Sure. Right. But it's you, you, you don't disagree that it's evidence of whether you have a good faith belief. That just what you're claiming you believed seems deeply implausible to us. Right. Like that you could say, I'm, I'm skeptical because what you're claiming seems implausible. Right. Well, this is what the judge specifically said in Welch. No, no, but go back and understand. Do you agree with the premise, right? That whether your belief is a reasonable one is evidence of whether you have a good faith belief? No, we, yes, I agree with that premise. Certainly your honor. But, but I'm saying, if you look at what the judge in Welch actually said in the trial judge, I'm sorry, the trial judge, the trial judge, I'm talking about the court of appeals of Virginia said in a published opinion in affirming the trial judge. And when they talk about why the evidence is sufficient above the line, I see them talking always very carefully in language of a reasonable fact finder could have concluded that she didn't actually believe it was hers. And the evidence was sufficient to permit a reasonable fact finder. Sure. But, but it also says earlier in the opinion that, that the claim of right defense is only available so long as the evidence establishes a reasonable basis for her to have a belief, which we read as imposing an objective requirement. Is there any other, I mean, one of the things we're, our job is to predict what the Supreme Court of Virginia would do. Is there any other Supreme Court that's abandoned the hundreds of years of precedent that requires an intent to steal for larceny? I mean, we can go back across the pond for hundreds of years. An actual intent to steal is required. Is there, are there jurisdictions that have, that have actually said what you are trying to pull out of Welch that a negligent, but good faith belief works? Certainly in, in, in Hynand, that was the 1996 decision of the Virginia court of appeals. Has any, has any other, any other jurisdiction made very clear that they've done that in the United States actually adopted the rule that you've suggested? I don't know off the top of my head. My point was just that Hynand did cite a number of cases from other jurisdictions. I don't know off the top of my head, whether those were the highest courts of those states or intermediate appellate courts of this, of those states. But my, my, my ultimate point is we have four decisions from the Virginia court of appeals, which as we read them, impose an objective, reasonable, objective reasonableness requirement on this. And I've been trying to, I think I might know, could you just quickly tell me what, when you say four decisions, what four decisions you're referring to? Hynand from 1996, Haboba from 2013, Norcraft from 2022, I believe 2023 and Welch the most recent one. That's what I thought. I just want to make sure that I knew which four we're talking about. Sure. And, and, and we're not aware of any, you know, decisions from the Virginia Supreme Court to specifically address this issue. But even if this court were hypothetically to certify the question to the Virginia Supreme Court, and it were to overrule the Virginia court of appeals, then that wouldn't change the fact that on the ground defendants have been convicted or have cases. Perhaps not, not going forward would not be, but maybe. Going forward. Yes. But it wouldn't, it wouldn't, it wouldn't change the facts on the ground going backwards. Now, but even, even if Virginia larceny does require a culpable mental state, our second argument is that petty larceny, petty larceny specifically would not be a CIMT because it doesn't require reprehensible conduct. Can I ask you just a threat? There was a statement in the brief that just really struck me and, and there was some authority cited. And I remember finding the authority that was cited, not persuasive for this point. What is your best authority for the proposition that we can consider changing social mores and deciding whether something is a crime of moral turpitude? I mean, I know we do this in the eighth amendment context, but that's because the Supreme Court has always been that you look to contemporary. Yeah, I know. But like man, Loper bright Chevron's gone. So kind of who cares what the board thinks now, right? Sure. Well, I, I, I think, I think this, this, uh, the boards, this court's recent decision in Ortega Cordova, that was the one involving solicitation of prostitute prostitution also was premised on the idea that even today there, there is a changing moral consensus. And I mean, if this court were to not consider, I'm sorry, say that one more time. You think Ortega Cordova supports the point that we have to look at the changing social mores? That you look at what it is that you consider a contemporary social norms today. I mean, if it was otherwise, then there would be crimes like adultery and sodomy, that would be crimes involving moral turpitude because those were historically, uh, regarded as crimes involving moral turpitude. Assuming they were still criminalized and assuming that people were still prosecuted for doing them. Yes, but well, adultery is still on the books in Virginia and it's really prosecuted, but I was like, can you identify the last time someone was prosecuted for adultery in Virginia? No, but the point is that it's, I mean, I'm certainly not aware of any court that, that has said that when, when you consider contemporary that we consider whether something is reprehensible, we are stuck, uh, with the views of society as they existed early in the 20th century. Isn't that kind of how we do statutory interpretation now? Uh, I mean the term crime involving moral turpitude was initially enacted in, in, I believe in the late 1800s, it's been reenacted multiple times. So then you would have the threshold question of what year. Can I take a step back at like a very high level generality on this point, like crime of moral turpitude is famously opaque and not clear what it means. And maybe there would have been an argument at some point is void for vagueness, all of these things. But I mean, when I think about what, when people say crime of moral turpitude, stealing seems pretty close to the heartland of crime of moral turpitude. Like if you think about what the historical understanding of a crime of moral turpitude is, stealing strikes me as pretty close to the core meaning. Like, or, you know, I used to work at the university of Virginia where like lying, cheating, and stealing the crime. Like why are those three singled out? Because they're viewed as uniquely culpable things, lying, cheating, and stealing. Right. So it just seems like a big ass to say there's a type of stealing that isn't a crime of moral turpitude. Well, under the, under the categorical approach, we're looking at the least of the acts criminalized. So as a general matter, is stealing wrong? Of course, but that's, that's the case with any crime. Sure. But I would just ask the court to consider the many ways. It's obviously not true for any crime. That's the whole point. The crime of moral turpitude is a subset, right? It is, it is, you know, lying, cheating, and stealing is a pretty good place to start, right? I mean, and maybe that's not sufficiently precise because it also includes things like prostitution. And so we can talk about other things, but it's obviously not every crime. There are tons of regulatory crimes that we don't think are crimes of moral turpitude. I should have said many crimes, but moral to the point is there are many ways that otherwise law-abiding people steal things all the time. So almost anyone who works in an office will at some point use the printer for personal use. Shoppers at the grocery store will occasionally sample a grape from a bag whose price depends on its weight. And it's not uncommon for someone who is filling up a soda at a fountain to fill up their cup, take a sip, and then top it off. All of these things qualify as theft, but few people would consider them reprehensible or even wrong in the first place because the harm to the victim is virtually non-existent. And we recognize that courts have historically regarded petty larceny as a CIMT, but the vast majority of those decisions, we think, just provided very little in the way of analysis. And those that did relied on reasonings that we think this court should reject. So for example, the Eighth Circuit in Bartos found that persons who commit petty larceny are not worthy of belief even under oath. And in Tillinghast, the First Circuit found that there was no distinction between petty and grand larceny because all theft was wrong in the eyes of God. Can I ask that? Yes. So under your theory that your analysis, are the courts, are we and other federal courts going to be engaged in constant line drawing as to how much is too much before it becomes morally reprehensible? Not at all. There's no line drawing required in this case because under the categorical approach, you're just looking at the least of the acts criminalized under the specific statute. So in this case, the least of the acts criminalized are stealing property worth less than a cent. Sure. But let me just give you a real easy, obvious, like imagine a state that has the line between like little larceny and medium larceny at $200. Is stealing $200 a crime of moral interpretation? Yes. $200 is unquestionably not de minimis. 20. We would also say that's not de minimis. Five. The point is, Your Honor, even if this court had to draw a line, we would win under any law. What's the answer on five? I'm sorry? You didn't answer the five question? Even if five is, we would win this case. No, no, but I'm asking what your position is. Is five... Is $5? Is that, which side of the line do you place? My point is, even if it is on that side of the line... No, no, I'm asking the question though is, do you think under your line, is $5 sufficient or not? Sure. Because our line is one cent. Even if the court draws a line at one cent, we win. So therefore, the court doesn't have to draw a line. So you agree that if they, that if it was $5 or more, so this was like medium larceny instead of like something else, but $5 or more, you agree that's a crime of moral turpitude. Again, that's not this case before the court. And I'm asking the question. Sure. We're happy to concede for Brewer's this case that $5 would be a crime involving moral turpitude. Our point is simply that if the line is simply one cent, we still win. And I also know... Less than, less than a cent even. It doesn't even have to be one cent. I'm just saying... Well, I'm saying if the court were to draw the line at one cent, we would win. And I would also note that I think our position is consistent with this court's decision in Martinez. That was the case that found that, uh, that recognized that joyriding is not a crime involving moral turpitude, even though it results in a permanent deprivation of the gas that is used during the joyride. And if permanently depriving someone of a small amount of gas during a joyride doesn't involve moral turpitude, we still, we see no principle to reason why... Can I just ask a question? I want you to, you can address it on rebuttal, but you brought up joyriding. My hypothesis on joyriding, I have no idea why joyriding isn't a crime of moral turpitude other than I've just, because I've had cases that involve joyriding. Like my hypothesis there is that's just some sort of historically contingent exemption for joyriding for reasons that don't honestly make a lot of sense to me. But that, so if you could address on rebuttal why we don't think of joyriding as just this weird historical carve out that probably should be a crime of moral turpitude, but for some weird reason is not. Sure. Well, I, I think it's because this, the answer is this court has held that it's not in... But the BIA has held that it's not in the context of the case of the crime of joyriding. It may be that we have a number of former judges when their youth might have been engaged in some joyriding. So that's the joyriding exception. I take the fifth. Mr. Saenz. Good morning, your honors. Chief Judge Diaz. May it please the court. Rudolpho Saenz for the U.S. because petitioner's conviction qualifies as a CIMT for purposes of cancellation of removal and it should dismiss petition 232059 because the petitioner waives any challenge to the merits of the denial of reconsideration and the challenge to the temporary appellate immigration judge's authority is meritless. As to the CIMT issue, this court need not venture so far into the weeds to conclude that petty larceny is a CIMT. It need only look to the decades of board and circuit precedent, recognizing that non-consensual takings are CIMTs when they have a special ingredient, the intent to permanently deprive. Do you think that that, that CIMT is a static concept that doesn't change depending on changing social mores? It could change, your honor. But in this case, we, we have the precedent since the forties for the board. But that's the point, right? We've got to, got to, I don't dispute the fact that there's a lot of precedent suggesting that, as my colleagues say, lying, cheating and stealing are bad. But, but the question is, at what point do, if any, and Mr. Wintergrad's argument is that social mores may be changing with respect to this particular form of larceny. And the amicus brief, you know, describes a number of examples of folks who are weighed down by economic disparity and do things that they might not otherwise do out of desperation. And the question is whether those people truly are morally reprehensive. Are they? Well, our position would be that the justifications for a crime don't necessarily have a role in the categorical approach or in discerning whether there's been a change in mores. But if you look even at the Supreme Court's decision in DeGeorge there, it dealt with a fraud crime and it, the analysis that the court looked at was the manner in which it has been decided in the cases. We have a similar situation here. And just this summer, the board had an and it declined to do so. Can I ask, can I ask you, so just assume that I repeat a bunch of things that Judge Richardson said to your colleague, and let's assume that I find a fair number of them fairly persuasive. Can you talk me through Peña Paneto? Because that's the one that actually is troubling for me. Because that's the case that this is the Supreme Court of Virginia. You know, this is the, you, you can't have a claim of right defense if you rob another drug dealer of money that you think was your drug money. Why is that? Like on the one hand, it seems obviously intuitively right to me. And the theories that the Virginia Supreme Court gives is that like, you can't have a property interest in contraband. You can't have a property interest in the proceeds of contraband. But that's an argument why you're wrong when you believe it's yours. That's an argument why you're objectively unreasonable when you believe it's yours. But none of that necessarily responds to the argument that the defendant in that case may have in fact sincerely believed that it was his, right? And so doesn't that suggest, like, why isn't that hard to square with the notion that you cannot be, like, I actually think that's maybe their best case. Like that seems to suggest that even a defendant who honestly believed it was his, even though he was wrong legally and objectively unreasonably, but they smack that claim down with extreme prejudice. And there's no suggestion that he, it's not just that he can't get a jury instruction. They seem to suggest very strongly this defense is invalid as a matter of law. And how do you square that with the notion that this can't be violated if you have a... Yes, go ahead. I guess our position would be that in that case, it cites this Pierce case, which is a Supreme Court of Virginia case, which kind of is the underpinning for a lot of these precedents. And it talks about the defense as coming in as a matter of evidence, as this court was alluding to earlier. So our position would be that it is something of an evidentiary matter rather than a requirement that needs to be shown. And... I mean, I guess I would say if I was a defense attorney, if I was a trial judge who read that case and a defense attorney got up and said the following, you may not like the fact that my client is a drug dealer who was robbing another drug dealer. The judge is going to instruct you that as a legal matter, he was wrong in claiming that he believed it was his. You might also think it's crazy for anyone to actually believe they can own drug proceeds, but he took the stand and he said he believed it's his. And if you believed him when he said that, you must acquit him. I would be very reluctant to say that as a defense lawyer, having read this case, because based on the Supreme Court of Virginia's decision, I think I'm about to get in big, big trouble. I think the government's going to object. I think that's going to get sustained. And I think I'm going to get yelled at. And if I'm the trial judge, I'd probably think I should sustain that objection because the Supreme Court of Virginia said this does not matter. But that suggests to me that there are at least some defendants who could honestly believe it's theirs and still be guilty. Now, maybe that's a weird historical exception for contraband, but that's the only thing I've been able to come up with. But it ultimately comes down to whether the person had the specific intent or not. So if as an evidentiary matter, they reasonably believed or didn't. But what I'm telling you is I don't read that decision saying the Supreme Court of Virginia agrees with you on that question. I read that decision saying the Supreme Court of Virginia that that is not a defense, even if you honestly believe the contraband belongs to you. But isn't that because it's all based on this fiction that you can't have a property interest in contraband? I mean, it seems like to me the oddity here is this is like a public policy exception for contraband. There's no principle in the common law that you cannot. This is just an exception for contraband. And so I took that to be one of these exceptions. Maybe, you know, Toby's joyriding is one too, but that it's an exception for public policy reasons that sort of distinct from the broader principle of law. Correct, Your Honor. We would agree with that position. And I think it's important to also liken this case to the Granados case, which this court decided. And there the bases, among others, was distinguishing the Martin case in part because no case law had suggested that, oh, I'm sorry, in Martin, there had been case law that suggested that the defense may impact whether or not it is ultimately negligent mental state. But here we have no such precedent. There, the court was relying on the Bain case in Maryland, which outright, irrespective of the defense, recognized that negligence could be encompassed within the general intent. Here we have no such case that says after applying or not applying the defense that the petitioner was, in fact, acting negligently and that it changed the specific intent that's otherwise required for the crime. The other important thing to know from Granados that we feel is persuasive is that there the court said that the defense only underscored the specific intent or the intent requirement in that case. And that was because it negated an element of the crime. We have that same situation here. All of the cases that the party cite expressly acknowledge that this defense could ultimately negate the element. So it goes back to this idea that we ultimately care about whether or not the specific intent is there or not. Mr. Winograd listed a number of examples of folks doing things during the course of a day, stealing a grape or taking a grape off of supplies from an office as the kinds of things that society would not necessarily think, even if wrong in some abstract, broad way, wouldn't think it would be morally reprehensible. Does that matter for purposes of our analysis? It doesn't matter based on the decades of precedent. But even if we take one of those examples, taking grapes from the supermarket, there are situations where a person would not necessarily be committing a CIMT, but that's because there's an entitlement to taking that property. If a person is a customer, it might be part of the understanding that they take ketchup packets, but perhaps a person who's coming in with no desire to purchase anything doesn't have that same entitlement. So it just underscores that all we care about is the intent. That's been the special ingredient all along, and it continues to be to this day. I do want to quickly address Martina's decision and joyriding. The court didn't hold that joyriding is not a CIMT, even though it permanently deprives a victim of gasoline. It was addressing a separate legal question about the expanded definition of CIMT thefts, i.e. where the person intends to deprive and substantially erode the property. And it didn't recognize that this court has to look at a threshold for the value of the property taken. It was looking at value as a factor for discerning whether the deprivation had been enough. So even in that context for theft, there has never been a requirement that we look at the value of the property taken. What matters is ultimately this intent. Can I just go back to rephrase slightly differently? So let us imagine the following. That if a Virginia court, or if we were to conclude a Virginia court would, in situations where the defendant did not have an objectively reasonable belief and thus will not give the jury instruction, does your argument depend on the claim that under Virginia law, defense counsel can still argue based on the general definition of intent to steal? And this would be a correct statement of the law. Like my client took the stand. She told you she thought it was hers. I don't care. You may not, you may think it sounds fishy. You may think it sounds weird. You may think she's deeply weird and she has a lot of quirky beliefs about a lot of things. But if you believed her, when I say believed her, if you believe that she was telling the truth when she said that, you must acquit her, no matter how insane you think her belief is. Does your ability to prevail depend on the idea that the Virginia courts would let you do that and say that's a legally correct argument? No, your honor, because ultimately what we care about is the outcome as to the intent. So hold on, if I can't get a jury instruction and I can't make an argument, we're probably not going to get the outcome. When you say, when you say no, there's a compound question and I'm not sure which one you were saying no to. Right. So he gave you a premise. Could you do that as a defense lawyer? Question one. Question two, does your argument depend on that answer? Question two, you said no, but I don't know which one you said no to. My bad. So can you start with the first question, which is defense lawyer stands up and says, my client's deeply weird. She believes crazy things, but she really believes them. And if you believe that she's telling you the truth, then she had no intent to steal. That's a correct, that's a legitimate argument that the Virginia courts would permit. So in terms of the premise, our position would be that it's not something necessarily that matters for purposes of the ultimate specific intent inquiry. I know, but answer the first question first. Would a Virginia court permit that? Under the case law that we've read, we've all these cases and bracket for a minute, um, the, the cases that seem to be based on the public policy of not helping criminals. Right. But, but in a, any other property case, right. Uh, uh, any other piece of property that's not contraband, um, would the defense lawyer be permitted based on your read of these cases to make that argument, forget about a jury instruction, but stand up and there's no intent to steal because my client has an idiosyncratic, but real belief that this was granted to him by, you know, whatever, some, some crazy thing. Apologies. I think I misunderstood the question initially. So yes, the defense counsel could be able to raise that argument. And the second question is, do you believe that your, that your ability to win this case depends on that being the correct answer under Virginia law? No, your honor, because ultimately this case is much like Granados in that we don't need to look at what the defense impacts if, if it doesn't change the ultimate mental state that is required. But how would it not change the ultimate mental state? Because in the hypo judge Richardson and I just gave you this defendant subjectively believes it's hers. That, that seems like an important mental state that she subjectively believes it's really hers. How does that not change the ultimate mental state? Because it's evidence that goes to whether or not the person specifically intended to take or deprived. Well, you can't intend to take someone else's property that you believe is yours. I don't know how I can intend to take your property. If I believe that the property in question is mine. Now I might be wrong about that. It's my property, not yours, but I don't know how I can intend to take your property. If again, an infallible lie detector test would reveal that I honestly believe it's mine. But if that is the case as an evidentiary matter, the person, the defendant doesn't have the requisite mental state. Yes, I agree. Okay. So what we care about actually is the situation where the defense doesn't work and whether or not that changes the mental state. So if the person doesn't act with the objectively reasonable belief, does that ultimately change the, that the person, um, has to have acted with the specific intent and our position is no, because ultimately we still have to show the same thing that the person did or didn't intend. If the defense fails, then the person had the intent. Can I ask you how you square your statement that we categorically don't consider affirmative defenses with the very clear fact that in Martin we did? Sure. Um, so in Martin, the court relied on state case law to conclude that the offense ultimately requires negligence. It cited the Bain case and the Bain case, but we called it an affirmative defense in Martin, right? I believe so, your honor. Okay. So I just don't know how we can say we categorically don't consider affirmative defenses. If there's a case of ours that's, and I know Granado says that we don't, but Granados came after Martin. So I don't know how Granados can say we categorically don't consider them after Martin said we do sometimes, at least sometimes we didn't say we always do, but we, I, the statement that we never do seems like it can't be possibly right in light of Martin because in Martin we considered what we described as an affirmative defense. Sure, your honor. And I'm not, I'm not aware of any circuit precedent where they have said that they, that, that it doesn't, I'm sorry, any circuit precedent that says that we can't consider the defense. Um, what is the difference in your, I mean, this semantics are hard sometimes, particularly when we're talking about state laws and the like, um, the difference between, in your mind, between a defense and an affirmative defense is what? Like when we use the term affirmative defense. Sure. Um, what do we mean by that? That's distinct from, you know, just a defense that defeats an element. And when you say, uh, what do we mean you're speaking to? You, what do you think? Right? So, I mean, there's a little bit of a challenge of semantics, right? And there's, you can draw a line between a defense that is something that negates an element and an affirmative defense, which is something that protects you from liability, even if the elements are met, right? That might be a line to draw between those two, a defense and an affirmative defense. We would agree. Um, but my read of state case law is that is not the uniformly adopted understanding of those terms. Correct. Your Honor. There are instances in the state cases that call it an affirmative defense. There are others that call it the claim of right defense. Um, and so sometimes, um, the court has, the courts below have, have sometimes meant one. And your, your point is whatever the semantics, what we don't do is consider the first option, which is something that would defeat the element. And maybe sometimes we call that affirmative defense. Sometimes we call it a defense, but that where you're defeating an element, that's a, a separate inquiry than where like self-defense, which is I did those things, but there's a, there's an affirmative story. Correct. Your Honor. Those, those things would be different, but it wouldn't ultimately be dispositive here because as I mentioned before, we have the absence of a state case that's showing that the mental state here changes with or without the defense. At, at bottom, it just negates the element and that underscores that we have to show that that element exists or not. Do you have anything else, Mr. Saenz? Uh, no, I would cede the rest of my time to my, my friend on the other side. Thank you very much. Thank you. Mr. Wernigrad. Thank you, Your Honors. Just to pick back up on this affirmative defense issue, we think the government's argument conflates the, the distinction between a true affirmative defense and what in Virginia is called a case in chief defense. A true affirmative defense, like insanity, uh, can't be considered under the categorical approach because it doesn't negate an actual element of the crime. And self-defense would be the same. Correct. Correct. It's simply available as a matter of policy for defendants, uh, who, who, uh, society believes shouldn't be punished, even though they actually did commit duress. Correct. Correct. Exactly. By contrast, a case in chief defense does negate an element of the crime. I, I, so I think the term affirmative defense is sometimes overused the way the term jurisdictional is sometimes overused to refer to actually claim processing rules. I think that's, that's the same case with affirmative defenses. Now, if, if the only requirement to succeed on an abandoned defense in Virginia was subjective honesty, if that was truly the only requirement, then it would hinge entirely on the credibility of the defendant. And if it was purely a question of credibility, then we think it would always have to go to the jury. We don't think a judge has any discretion to say, uh, in this case, there's no way the jury could find, uh, this particular defendant credible. But judges do get, I mean, judges do get a lot of discretion about whether to give supplemental jury instructions, right? Sure. But I don't believe on credibility. I think credibility is always a question. No, you're not entitled to a self-defense instruction just because you say you want a self-defense instruction, right? The judge usually has to find like some plausible basis on which a reasonable jury could find conceivably this was self-defense. You're not entitled, you're not, let's just say the other ones, you're not entitled to an insanity defense instruction just because you want one or a duress instruction just because you like, that's pretty normal that like, just because you want an instruction doesn't mean the trial judge has to give it to you if there's no evidentiary basis for it. Sure. But, but I believe at least with self-defense that there is an objective component to that. And the reason that instruction can be denied is if no reasonable person in that position would feel the need to exercise self-defense. And so we think the same as here. And the whole point of this, that any instruction about this is duplicative of the element anyway, because this is Judge Hyten's point, right? Instruction or no instruction, if you stand up and say, if you believe my client, they have a belief that it's theirs, that by definition defeats an intent to steal. And so I actually don't understand the jury issue as being relevant, jury instruction issues being relevant to this at all. There's an instruction that requires intent to steal, right? That, that's sufficient for the defense to make the argument. The good faith defense is, is like a euphemism, right? It just defeats the element. You already have the element. And so the defense is entitled to make that argument. If Virginia wants to provide a supplement to that instruction, that seems fine, but like irrelevant to my calculus. Why is that not right? Well, I think ultimately the jury instruction issue is a red herring because Welch was a bench trial. And if, if, if objective reasonableness wasn't supposed to be considered at all, then I think the Virginia Court of Appeals would have said, this is a bench trial, but the judge didn't even consider it. But the whole point is the judge is absolutely supposed to consider it in Welch. The trial judge is because it is evidence of whether the belief was in good faith or not. Well, the trial judge set forth, said, specifically said, my understanding of the law is that this is a two-part test that requires both subjective honesty and objective reasonableness. If that wasn't correct, I would, I would think that the Virginia Court of Appeals would have used the decision as occasion to, to specifically say that objective reasonableness is not a standalone requirement as the trial judge appeared to. And that just turns out whether we think footnote three does that or not. Correct. Correct. Now, just very briefly, I just want to make clear all of our hypotheticals involving grapes, ketchup packets and whatnot, those are, those are situations where the person doesn't, isn't entitled to it. Or, or a person is simply doing it out of greed. And our point is simply that, you know, someone who, who samples a grape that they're not otherwise entitled to take, or who takes a sip from a soda that they're not otherwise entitled to take, the harm is so minimous that it simply doesn't rise to the level of moral turpitude. Thank you, Mr. Winograd. Thank you. I want to thank both counsel for their excellent arguments this morning. We'll come down and greet you and move on to our second case.
judges: Albert Diaz, Julius N. Richardson, Toby J. Heytens